# Exhibit 1

DEPARTMENT OF HOMELAND SECURITY

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

And

FEDERAL BUREAU OF PRISONS

FEDERAL CORRECTIONAL COMPLEX

13777 Air Expressway Blvd

Victorville, CA 92394

---

Pursuant to relevant authority under the Economy Act, 31 United States Code (U.S.C.) § 1535 this Inter-Agency Agreement (IAA or Agreement) is entered between the United States Department of Justice, Federal Bureau of Prisons (BOP), and U.S. Immigration and Customs Enforcement (ICE). The parties hereby agree as follows:

1. **PURPOSE AND SCOPE**:

    (A) To establish operational procedures for the confinement of ICE detainees at the Federal Correctional Complex, Victorville (FCC or FCC Victorville).

    (B) Nothing contained in this Agreement shall be construed to abrogate, impair, alter, or amend any other agreement or contract now in effect between the parties relating to any other subject.

2. **PERIOD OF PERFORMANCE**:

    This Agreement shall become effective June 8, 2018, and shall expire on June 8, 2019. Any provisions which require performance after the expiration or termination shall remain in force notwithstanding the expiration or termination of this Agreement.

3. **PERFORMANCE**:

    Subject to the availability of suitable space, FCC Victorville will reserve beds for the confinement of 1,000 male ICE detainees. ICE shall coordinate with FCC Victorville for the processing of ICE detainees. Generally, forty-eight (48) hour advance approval is required prior to routine processing of ICE detainees in and out of FCC Victorville. However, in those cases where ICE loses detention authority over the detainee (e.g., bond posted), ICE will provide as much advanced notice as possible and transport such detainees from

the FCC. Normally, detainees may be fully processed (funds, clothing, etc.) between the hours of 8:00 a.m. and 2:00 p.m., Monday through Friday, excluding federal holidays. Outside of these times frames, full processing of detainees may not be possible.

4. **OPERATIONAL RESPONSIBILITIES AND PROCEDURES:**

   A. **TRANSFER REQUEST BY ICE:**

   1. ICE shall request permission to transfer detainees to FCC Victorville by submitting a manifest listing the names, date of birth and alien registration number of the ICE detainees it proposes to transfer to FCC Victorville along with a written referral containing the following information, if applicable, or known to ICE for each of the ICE detainees listed on the manifest and proposed for transfer:

      a. Copies of all relevant documents which relate to the detainee's case history, infectious disease history, education, physical and clinical record, including but not limited to, copy of a pre-sentence investigation or equivalent report, summary of institutional adjustment if applicable, summary of prior offense history, and a description of the detainee's gang affiliation and activities including any security concerns with other gang members. Clinical documentation shall include all available information on health history, current medical/mental problems, and a list of any prescribed or over-the-counter medications being taken. ICE will provide a full record upon request. Case history information should be equivalent to that which is provided in a BOP Prisoner Remand form and ICE detainer form.

      b. Copies of all judicial and administrative rulings and orders relating to the detainee and the sentence(s) of confinement, including any outstanding warrants or detainers and sentencing data to include the date the sentence was imposed, the date the sentence began, and projected release date;

   2. ICE shall submit the transfer request to the receiving party at the appropriate address below:

      Case Management Coordinator
      Federal Bureau of Prisons
      Federal Correctional Complex
      13777 Air Expressway Blvd

        Victorville, CA 92394
        Phone: 760-530-5000, ext. 5122
        E-mail: VIM/Case Mgmt Coord@bop.gov

B. **ACCEPTANCE/REJECTION BY BOP:**

1. The BOP shall have sole discretion to approve or reject each detainee from ICE. After receipt of a transfer request, the BOP shall review the request and inform ICE of the approval or denial. The Warden or designee (Warden) at FCC Victorville may reject or remove a detainee for any reason including but not limited to medical, mental health, safety, or security reasons. If additional bed space is needed to further FCC Victorville's primary mission of housing federal prisoners, the Warden may require removal of ICE detainees from the institution. ICE officials may consult with the Warden regarding the rejection or removal of detainees, but the Warden will have the final decision concerning such matters.

2. FCC Victorville will not accept ICE detainees who require separation from other ICE detainees already housed at the institution.

3. The Warden may refuse detainees who are unable to provide for their own normal daily living functions in a correctional environment (e.g., require skilled nursing care, are bed-ridden, need emergency care to stabilize a medical crisis such as obvious intoxication or symptoms of communicable infections such as tuberculosis) and for mental health concerns. Detainees brought directly from a community hospital post emergency care must have documentation of medical clearance by a physician. Detainees requiring nursing care will not be accepted. Wheelchair detainees will be accepted subject to medical evaluation. Wheelchair detainees must be able to perform daily basic functions for themselves, i.e., dressing, eating, bathing, and bathroom use.

4. FCC Victorville will not accept juveniles nor female inmates.

C. **TRANSFER TO BOP AND TRANSPORTATION COSTS:**

1. Upon receipt of transfer approval, ICE shall deliver the detainee being transferred to FCC Victorville.

2. All costs incident to the transfer of each detainee, including transportation, shall be the responsibility of ICE. By consultation and agreement of the parties, one party may act as agent of the other party for purposes of transporting that

      party's detainee's, so that transportation costs may be minimized.

3. Personal Property will be limited to clothing worn upon arrival, a plain wedding band (without stones) valued at $100.00 or less, prescribed medication/medical devices, legal materials relevant to current deportation or other legal proceeding, prescription eyeglasses, U.S. currency, and one non-metal religious medallion valued at $100.00 or less. **All other detainee property shall be stored by ICE**. Previously prescribed medications and devices may still be subject to prohibition, rejection or substitution depending on safety and security concerns.

4. Personal funds shall be regulated by existing FCC Victorville policy.

5. FCC is not responsible for providing release gratuity or transportation funds for ICE detainees.

D. **CUSTODY, SECURITY AND DISCIPLINE:**

1. ICE will provide FCC Victorville staff with written notification when significant changes occur in a detainee's status that may impact security concerns, such as denial of an appeal, or receipt of deportation date.

2. In the event an emergency evacuation is necessary at FCC Victorville, as determined by the Warden, ICE agrees to assist the BOP with the evacuation, transportation, and temporary detention of ICE detainees housed at FCC Victorville. ICE is responsible for all costs associated with the evacuation of ICE detainees from FCC Victorville.

3. The BOP shall have physical control over, and power to exercise disciplinary authority upon, a transferred detainee, as follows:

   a. While in the BOP custody, a transferred detainee shall be subject to the BOP's rules and regulations consistent with BOP's policies for pre-trial detainees and the laws, rules and regulations of the sending party.

   b. Nothing contained herein shall be construed to authorize or permit the imposition of a disciplinary action prohibited by law. Each party shall ensure that disciplinary procedures comply with applicable due process.

c. ICE shall ensure that its transferred detainees have been advised of appropriate procedures to follow in raising concerns related to their confinement.

d. While in the custody of BOP, detainees shall be subject to federal laws, rules, and regulations not inconsistent with the detainee's legal status.

e. ICE detainees must comply with existing FCC policies and procedures, unless otherwise noted in this agreement. ICE agrees to assist in the translation of detainee publications, such as the Admission and Orientation Handbook, applicable policies and procedures.

f. ICE is responsible for the costs associated with postage for indigent ICE detainees.

g. ICE is responsible for the costs associated with transportation, incidental expenses including meals, and any other costs associated with any hearings or legal proceedings for ICE detainees.

h. ICE detainees will comply with existing FCC inmate telephone regulations. ICE detainees must make arrangements with an ICE representative to make any telephone call that cannot be placed through the Inmate Telephone System (ITS) if feasible. The ICE is responsible for all costs associated with non-ITS telephone calls made by ICE detainees.

i. Requests to interview ICE detainees will be approved solely by ICE, and if the interviews are to take place at FCC Victorville, will be handled in accordance with BOP policy. Detainee requests to be interviewed by the media will also be approved solely by ICE and will not occur at FCC Victorville. The FCC Public Information officer will notify ICE when an interview is requested. ICE officials may consult with the Warden regarding interviews with the media, but the Warden will have the final decision concerning access to the media for detainees at the facility. FCC staff will not release non-public information or otherwise comment on matters involving ICE detainees.

j. ICE will remain flexible in the deployment of officers assigned to FCC. Deployments of ICE personnel to the FCC shall be commensurate with the number of detainees being housed at any given point in time. ICE will disseminate

      up-to-date and accurate information pertaining to travel document status and discuss any other relevant issues at a minimum once per week to the detainees. ICE agrees, under normal circumstances, to limit rotation of its representatives to once every six months to maintain consistency. Detainees visiting with ICE staff in unit offices are under the direct supervision of the ICE representative.

k. ICE detainees will have access to education and psychology materials, leisure and law libraries, and indoor and outdoor recreation.

### E. ESCAPES:

If an ICE detainee escapes, BOP will immediately notify ICE. After notification, ICE shall have the primary responsibility and authority to direct the pursuit and retaking of such escaped ICE detainee.

### F. MEDICAL SERVICES:

1. ICE is responsible for providing the transportation, supervision and funding for outside medical care of ICE detainees housed at the FCC. FCC staff will notify ICE a minimum of 48 hours in advance of scheduled outside medical appointments. When feasible, appointments will be scheduled Monday through Friday, between 9:00 a.m. and 2:00 p.m. For security reasons, the detainee will not be provided with advance notice of the scheduled appointment.

2. In the event of a medical emergency, FCC will immediately provide necessary emergency medical treatment, including initial on-site stabilization and off-site transport to an appropriate emergent care facility, as needed or via ambulance as clinically indicated. In emergency situations requiring hospitalization, FCC staff will transport ICE detainees to a local hospital or escort via ambulance if clinically indicated and will remain until properly relieved by ICE or contract guard service personnel. FCC will notify ICE immediately regarding the nature of the transferred detainee's illness or injury and the type of treatment provided. The cost of all emergency medical services provided off-site will be the responsibility of ICE. At no time shall FCC or detainee incur any financial liability related to such services. All such services are submitted for approval through the Medical Payment Authorization Request (MedPAR) system, using the following website: https://medpar.ehr-icehealth.org/ The primary point of contact for obtaining pre-approval for non-

   emergent care as well as the post-approval for emergent care
   will be the ICE Health Service Corps (IHSC) Field Medical
   Coordinator (FMC) assigned to this location.

3. FCC will release all medical information for ICE detainees to
   the IHSC representatives upon request and report all
   hospitalization updates daily to the FMC.

4. FCC shall submit a Medical Payment Authorization Request
   through the MedPAR system to IHSC for approval of payment
   for off-site medical care (e.g. off-site lab testing,
   eyeglasses, prosthetics, specialty care, hospitalizations,
   emergency visits), using the following website:
   https://medpar.ehr-icehealth.org/

5. Once approval is received, the FCC shall provide the Service
   Provider with a copy of the MedPAR authorization to allow for
   submission with the medical claim. The Service Provider shall
   send medical claims directly to the VA Financial Services
   Center. The contact information is below.

               IHSC VA Financial Services
               Center PO Box 149345
               Austin, TX 78714-9345

6. The FCC Health Authority shall notify ICE and the FMC as soon
   as possible if emergency off site care will be or was required;
   and in no case more than seventy-two (72) hours after detainee
   received such care. Authorized payment for all off-site medical
   and/or mental health services beyond the initial emergency will
   be made by the Veterans Administration Financial Service Center
   (VA FSC) on behalf of IHSC directly to the medical provider(s).

               IHSC VA Financial Services
               Center PO Box 149345
               Austin, TX 78714-9345
               Phone: (800) 479-0523
               Fax: (512) 460-5538

7. The FCC will provide in-house health care for ICE detainees
   confined at FCC Victorville. In-house is defined as health
   care provided inside FCC Victorville. The scope of in-house
   health care services will be the same as afforded to BOP
   inmates as determined by BOP policies and clinical guidance.
   FCC retains the right to invoice ICE for catastrophic expenses
   incurred in providing in-house healthcare. Catastrophic
   expenses are defined as medical expenses in excess of $10,000
   over any four-month period.

    8. If agreed to by both parties that a funeral or bedside visit is appropriate for an ICE detainee, ICE will provide escort and will pay for all costs incurred.

### G. **DEATH**:

In the event of a detainee death the FCC will provide the following information at the time of notification:

1. Name, Register Number, ICE Number, DOB
2. Date, Time, and location of death
3. Apparent cause of death
4. Investigative steps being taken, if necessary.

The FCC will properly identify the deceased detainee by taking postmortem photos, and fingerprints. Once properly identified the deceased detainee will be turned over to the coroner as soon as possible. The FCC will transfer the deceased detainee's property, unless it is retained as evidence. In case of a questionable death the Special Investigative Agent (SIA) will work in cooperation with ICE on any on-going investigation. The Warden and/or ICE District Director reserve the right to order an autopsy following the death of any ICE detainee. Death notification will be handled by the ICE. All costs associated with the death of an ICE detainee shall be paid by ICE. This includes, but is not limited to autopsy, casket, and funeral home transportation.

### H. **RELEASE/RETURN**:

1. In preparation for the lawful termination of a transferred detainee's confinement, ICE shall accept return of the detainee at its own expense.

2. All costs related to the return of a transferred detainee, including transportation, clothing, supplies and any release gratuities shall be separately provided by ICE, in a manner mutually agreed upon by the parties.

3. If a detainee is rejected by the BOP after transfer to FCC Victorville, ICE shall be notified to re-take physical custody of the detainee. ICE shall remove the detainee from FCC Victorville within four (4) hours. All costs associated with transporting the detainee to or from the FCC are the responsibility of ICE.

5. **REIMBURSEMENT BY ICE**:

In consideration for the BOP's performance under the terms and conditions of this Agreement, and as required by 31 U.S.C. § 1535, ICE shall reimburse the BOP for the full costs and expenses of each ICE detainee accepted and housed by BOP.

6. **BILLING/PAYMENT PROCEDURES FOR ICE DETAINEES**:

A. **PER DIEM RATE**:

Payment will be made at a rate equal to the actual cost per-inmate, per-day for BOP based upon the BOP Fiscal Year 2017 Per Capita Report: $107.62. The estimated maximum number of ICE detainees expected to be housed under this agreement is 1000 male ICE detainees. Based on the one (1) year performance period, the total value of this Agreement is not to exceed: $39,281,300.00.

B. **INVOICES**:

Invoices for ICE detainees shall itemize each detainee by name, register number, dates of stay, and the appropriate per diem rate. Billing shall be based upon the actual number of days used and shall include the day of arrival but not the day of departure.

C. **INVOICE SUBMISSION**:

All invoices shall be submitted on a monthly basis through the Intragovernmental Payment and Collections (IPAC) system.

D. **PAYMENT**:

Since this is an Economy Act based Inter-Agency Agreement (IAA), ICE shall make payment promptly after receipt of an appropriate invoice, ordinarily within thirty (30) days, via the Intra-Governmental Payment and Collection (IPAC) system at the following address using the accounting information listed:

>Federal Bureau of Prisons
>Accounting Operations
>320 First Street, NW
>Room 500-9
>Washington, DC 20534
>
>Accounting Location Code (ALC): 15100900
>Treasury Accounting Symbol (TAS): 15121060
>Accounting Code:
>DUNS/BPN: 878435213
>TIN/EIN:  530205705

7. **ANTI-DEFICIENCY ACT:**

**Nothing contained herein shall be construed to violate the Anti-Deficiency Act, 31 U.S.C. § 1341, by obligating the Federal Bureau of Prisons to any expenditure or obligation of funds in excess or in advance of appropriations.**

8. **GENERAL PROVISIONS:**

   A. **MODIFICATION:**

   This Agreement, or any of its specific provisions, may be revised or modified by signatory concurrence of the undersigned parties, or their respective official successors. If any provisions of this Agreement become invalid or unenforceable, the remaining provisions shall remain in force and unaffected to the extent permitted by law and regulation.

   B. **TERMINATION:**

   This Agreement may be terminated by mutual written agreement or by either party upon sixty (60) days advanced written notice to the other party, or sooner by signatory concurrence of both parties. Within sixty (60) days after giving unilateral termination notice to ICE, or after receiving unilateral termination notice by ICE, all detainees shall be transferred to ICE custody under this Agreement. ICE bears the cost of transporting all ICE detainees out of the FCC.

   C. **LIABILITY:**

   Each party is responsible for any liability arising from its own conduct. Each party shall cooperate with the other in the investigation and resolution of claims arising from the agreement; and neither party shall be responsible for delays or failures in performance from acts beyond the reasonable control of the party (e.g., a natural or man-made disaster). Neither party agrees to insure, defend, or indemnify the other. Any and all costs resulting from this agreement not otherwise identified in the Agreement will be borne by ICE.

   D. **DISPUTE RESOLUTION:**

   In the event of a dispute between the parties, the parties shall use their best efforts to resolve the dispute in an informal fashion through consultation and communication, or other forms of non-binding alternative dispute resolution mutually acceptable to the parties.

E. **POINTS OF CONTACT**:

Each party shall provide to the other party, and update as necessary, a list of contact information for staff authorized to implement this Agreement and coordinate further operational details. At time of signature, each party has identified the following positions as the primary points of contact for the named subject areas:

1. Agreement Administration, e.g., notices, proposed modifications related to this IAA:

   **BOP:**

   Agreement Administrator
   Chief, Residential Reentry Contracting
   Federal Bureau of Prisons
   320 First Street, NW
   Washington, DC 20534
   Phone: (202) 307-3070
   Email: BOP-ADM/Comm Corr Contracting@bop.gov

   **ICE:**

   Lamont Flanagan
   Unit Chief, DPAU
   ICE Headquarters - Potomac Center North
   500 12th St. SW
   Washington, DC 20536
   Phone: (202) 732-3472
   Email: Lamont.W.Flanagan@ice.dhs.gov

2. Technical Requirements, e.g., individual case details:

   **BOP:**

   Case Management Coordinator
   Federal Bureau of Prisons
   Federal Correctional Complex Victorville
   13777 Air Expressway Blvd
   Victorville, CA 92394
   Phone: 760-530-5000, ext. 5122
   E-mail: VIM/Case Mgmt Coord@bop.gov

   **ICE:**

   Attn: Ian Herrera
   Supervisory Detention and Deportation Officer
   Adelanto ICE Processing Center (APC)
   10400 Rancho Rd.
   Adelanto, CA 92301
   Phone: (760) 561-6100
   Email: Ian.R.Herrera@ice.dhs.gov

IN WITNESS WHEREOF, the undersigned, duly-authorized officers have subscribed their names on behalf of the BOP and ICE:

U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

DAVID W. JENNINGS
(A) ASSISTANT DIRECTOR FOR
FIELD OPERATIONS

6/11/2018
DATE

for LONERYL L. BURNS
PROCUREMENT EXECUTIVE

6/11/2018
DATE